**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 3, 2007**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANAI CASTRO-PORTILLO,

    Defendant-Appellant.

No. 05-5141
(N.D. Okla.)
(D.Ct. No. 04 CR-146-01-HE)

_____

**ORDER AND JUDGMENT**[*]

Before **BRISCOE** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

Appellant Anai Castro-Portillo appeals his conviction and sentence for possession with intent to distribute marijuana. Mr. Castro-Portillo appeals his conviction on grounds the district court erred in denying his motion to suppress evidence obtained during his detention in conjunction with a search of his house, in violation of his Fourth Amendment rights. He appeals his sentence on grounds the 21 U.S.C. § 851 information filed by the government provided inadequate

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

notice of an enhancement. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Castro-Portillo's conviction and sentence.

I. Factual Background

From June to August of 2004, agents with the Bureau of Alcohol, Tobacco and Firearms (ATF) conducted cocaine and other drug purchases from Mr. Castro-Portillo's brother, Cesar Portillo. After first witnessing Cesar Portillo sell drugs, agents followed him to a house in Tulsa, Oklahoma. Items obtained from the trash at that house caused officers to believe cocaine was being re-packaged inside the house for distribution. While at least one of the utilities associated with the house was in the name of a Neptali Portillo-Guererra, items obtained from the trash included a satellite television bill and Western Union receipt in the name of Cesar Portillo.

During two subsequent drug purchases, surveillance agents observed Cesar Portillo leave the same house, drive to an apartment in Tulsa, and then drive to the location of the drug sales. Based in part on these circumstances, an ATF agent executed a twenty-three-page affidavit in support of a search warrant for both the apartment and house, stating he believed probable cause existed to search both locations for illegal drugs, guns, money, and other evidence related to drug trafficking. The affidavit did not mention Mr. Castro-Portillo, other than the fact

he was a passenger with Cesar Portillo when he was stopped for not wearing a seat belt, and agents otherwise possessed no information linking Mr. Castro-Portillo with the house to be searched, other than the fact they knew he left the house with Cesar Portillo before that traffic stop occurred. Based on the information contained in the affidavit, a magistrate issued a search warrant for both the apartment and the house.

On August 20, 2004, as police were preparing to execute the search warrant on the house, ATF Agent Matthew Abowd was conducting surveillance. At approximately 10:30 a.m., he saw Mr. Castro-Portillo exit the house, water some plants, and reenter the house. An hour later, at 11:30 a.m., Tulsa Police Corporal Tom Milburn relieved Agent Abowd so he and others could put on raid gear in order to execute the search warrant. Just before execution of the search warrant, at 11:40 a.m., Corporal Milburn saw a Hispanic man and woman get into a car parked in the driveway and begin to drive away; he immediately radioed Officer Kirk Montgomery, a police officer who was parked nearby to assist in the search; explained a car had just left the targeted home; and directed him to stop the car.

Officer Montgomery immediately stopped the vehicle driven by Mr. Castro-Portillo after it traveled two blocks from the house. When he asked Mr. Castro-Portillo for his driver's license and insurance, Mr. Castro-Portillo did not appear

-3-

to understand English and no documents were forthcoming. Because the vehicle left the targeted house, Officer Montgomery believed the vehicle carried the target of the search warrant. In addition, because Mr. Castro-Portillo had exited the house subject to a search warrant for contraband and weapons, and he was acting "extremely nervous" and "fidgety," Officer Montgomery believed Mr. Castro-Portillo may have had guns or drugs in the car. For safety reasons, Officer Montgomery ordered Mr. Castro-Portillo to exit the vehicle, handcuffed him, and did a quick check of his waistband for weapons before calling a Spanish-speaking police officer. Corporal Ricardo Aguilar arrived in ten minutes and questioned Mr. Castro-Portillo in Spanish as to his name and driver's license. Approximately five minutes after Corporal Aguilar's arrival, Mr. Castro-Portillo and his wife were taken back to the house, where authorities were concluding the search. Authorities recovered approximately three pounds of marijuana, drug notations, scales, and a sealing machine.

Authorities then took Mr. Castro-Portillo to the Tulsa police station, where ATF Agent John Rodriguez interviewed him in Spanish. Agent Rodriguez advised Mr. Castro-Portillo of his *Miranda* rights, which Mr. Castro-Portillo waived before giving his statement. In his statement, Mr. Castro-Portillo admitted: 1) he unlawfully entered the country from Mexico; 2) he and his wife resided at the house where the search warrant was executed; 3) he sold cocaine,

heroin, methamphetamine, and marijuana out of the searched apartment; 4) four kilos of cocaine were stashed near the apartment kitchen sink and dishwasher, and he kept prepackaged amounts of cocaine, heroin, and methamphetamine in a cabinet over the stove; 5) he kept three pounds of marijuana in the garage at his residence; and 6) Cesar Portillo is his younger brother, whom he hired to assist in the sale of contraband because he was better able to understand and speak English.

## II. Procedural Background

A four-count indictment issued, including Count 1 for possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II); Count 2 for possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii); Count 3 for possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Count 4 for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). Generally, § 841(a)(1) makes it unlawful to possess with intent to distribute a controlled substance,[1] while § 841(b) and its various subsections list the penalties

---

[1]  Specifically, § 841(a)(1) states, in part, it is "unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance ...."

statutorily proscribed for each type of drug, depending on the amount possessed.[2]

Thereafter, Mr. Castro-Portillo filed a motion to suppress the evidence obtained, based in part on his contention his Fourth Amendment rights were violated because authorities improperly detained him. The district court held a suppression hearing, during which the officers and agents involved with Mr. Castro-Portillo's detention and the search of his home testified. Based on this evidence, the district court denied Mr. Castro-Portillo's motion to suppress the contested evidence, concluding in part that the police had reasonable suspicion to stop and detain Mr. Castro-Portillo as he left the home just before they executed the search warrant and that the detention or seizure, which lasted a total of approximately thirty minutes from his stop to arrest, did not warrant suppression of the evidence.

On the first day of trial, the government filed an information to enhance Mr. Castro-Portillo's sentence, as allowed under 21 U.S.C. § 851(a)(1), for a 1989 Texas cocaine conviction, which it contended applied to Mr. Castro-Portillo's

---

[2] For example, § 841(b)(1)(B)(ii)(II) proscribes the penalties for the unlawful act of possession with intent to distribute 500 grams or more of cocaine; § 841(b)(1)(B)(viii) for possession of five grams or more of methamphetamine; § 841(b)(1)(C) for possession of a schedule I or II controlled substance (i.e., heroin), *see* U.S.S.G. § 2D1.1 (Drug Quantity and Drug Equivalency Tables); and § 841(b)(1)(D) for possession of less than fifty kilograms of marijuana.

violations of 21 U.S.C. § 841(a)(1) (unlawful act of possession with intent to distribute a controlled substance); and two parts of subsection (b), including § 841(b)(1)(B)(ii)(II) (Count 1 punishment subsection for cocaine), and § 841(b)(1)(B)(viii) (Count 2 punishment subsection for methamphetamine). The information did not include any reference to either the heroin or marijuana counts or their correlating § 841(b) subsections. Later, at the conference to discuss jury instructions, the government stated the enhancement would only apply to Counts 1 (cocaine) and 2 (methamphetamine), and not Counts 3 (heroin) and 4 (marijuana).

Thereafter, a jury acquitted Mr. Castro-Portillo of Counts 1, 2, and 3, but found him guilty of Count 4 for possession with intent to distribute marijuana. Following the trial, the government moved to amend the information, stating, in part, it committed a clerical error by not including reference to 21 U.S.C. § 841(b)(1)(D), the penalty subsection for marijuana, in the information. In turn, Mr. Castro-Portillo objected to the motion to amend, arguing the district court lacked jurisdiction to grant the motion because the government filed the amendment after the trial and had represented the enhancement did not apply to the marijuana count. In the subsequent presentence report, the probation officer did not apply an enhancement for the prior Texas conviction. In response to the government's objection regarding omission of the enhancement, the probation

officer suggested a legal question existed for the district court's resolution on whether the original information sufficiently met the statutory notice required under 21 U.S.C. § 851 and, if not, whether omission of § 841(b)(1)(D) constituted a clerical error allowing correction prior to the sentencing hearing.

At the sentencing hearing, Mr. Castro-Portillo again opposed the enhancement but admitted he had a prior Texas cocaine conviction. In granting the government's motion to amend, the district court held the original information met the requirements of 21 U.S.C. § 851 because it gave notice of the government's intent to rely on the prior conviction for enhancement purposes and afforded Mr. Castro-Portillo an opportunity to object if he disputed the existence of the prior conviction. The district court further determined that by listing some of the subsections of § 841(b) the government simply gave surplus information, and Mr. Castro-Portillo was not prejudiced, because he received notice of the enhancement, regardless of whether an error occurred in not designating the marijuana count. After considering certain criteria, including the United States Sentencing Guidelines and Mr. Castro-Portillo's criminal history; applying certain enhancements, including the contested enhancement for the prior Texas conviction; and concluding Mr. Castro-Portillo should not be punished for going to trial under the circumstances presented, the district court sentenced Mr. Castro-Portillo to eighty-four months imprisonment.

III.  Discussion

A.  Fourth Amendment Stop and Detention

On appeal, Mr. Castro-Portillo does not contest the validity of the search warrant, but contends the district court erred in denying his motion to suppress, given his "Fourth Amendment rights were violated by his detention pending execution of a search warrant at his residence."  Apt. Br. at 1.  Our standard of review on a motion to suppress is set forth in *United States v. Higgins*, which instructs:

> On review of a denial of a motion to suppress evidence, we consider the totality of the circumstances and view the evidence in a light most favorable to the government.  We accept the district court's factual findings unless those findings are clearly erroneous.  The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court.  Keeping in mind that the burden is on the defendant to prove that the challenged search was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.

282 F.3d 1261, 1269-70 (10th Cir. 2002) (quotation marks and citation omitted).  Unquestionably, probable cause is necessary for issuance of a search warrant, and "[a] valid probable cause determination requires only a substantial basis to find that evidence of a crime was probably present in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1203-05 (10th Cir. 2004).

Once a search warrant issues based on probable cause, we have looked to

*Michigan v. Summers*, 452 U.S. 692 (1981), in determining whether seizure of an occupant of the targeted building is valid. This court has relied on *Summers* for the proposition that where a valid search warrant issues "some seizures can be reasonable under the Fourth Amendment without probable cause where the seizure is inherently less intrusive than an arrest, is justified by substantial law enforcement interests, and the police have [a] reasonable articulable suspicion of criminal activity." *United States v. Ritchie*, 35 F.3d 1477, 1481 (10th Cir. 1994) (relying on *Summers*, 452 U.S. at 697-701).

In *Summers*, police stopped and detained the defendant as he descended the front steps of a house subject to execution of a search warrant. *See* 452 U.S. at 693. In applying the three-prong proposition announced in its decision, the Supreme Court first determined Mr. Summers's detention constituted a seizure but it did not violate the Fourth Amendment because the detention was less intrusive than allowed by the search warrant itself or an arrest. *Id.* at 701-02. The Court next outlined the law enforcement interests justifying such seizures, which include prevention of flight, minimization of the risk of harm to authorities executing the search warrant, and the orderly completion of such a search. *Id.* at 702-03. Finally, the Court discussed seizures in the context of when police have a reasonable articulable suspicion of criminal activity. *Id.* at 703-04. It held a search warrant for contraband founded on probable cause gives "the police officer

an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id.* at 704. In so holding, it concluded, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to *detain* the occupants of the premises *while a proper search is conducted*." *Id.* at 705 (emphasis added).

Since *Summers*, the Supreme Court, in *Muehler v. Mena*, 544 U.S. 93 (2005), has extended this holding. This court has relied on *Muehler* in stating "[p]olice officers have a 'categorical' authority to *detain* persons found on premises subject to a lawful search warrant for 'contraband' materials incidental to the officers' execution of the warrant." *Denver Justice & Peace Comm. v. City of Golden*, 405 F.3d 923, 929 (10th Cir. 2005) (relying on *Muehler*, 544 U.S. at 98), *cert. dismissed*, 126 S. Ct. 1164 (2006). As the *Muehler* Court stated, "*Summers* makes clear that when a neutral magistrate has determined police have probable cause to believe contraband exists, the connection of an occupant to a home *alone* justifies a detention of that occupant." 544 U.S. at 99 n.2 (quotation marks and citation omitted and emphasis added).

Applying *Summers* and *Muehler* to the case at hand, it is plain the search warrant in this case carried with it the limited authority to detain Mr. Castro-Portillo as an occupant during the search of the house. This alone was sufficient

-11-

to detain him during the entirety of the search. The fact he was not observed committing a crime at the time of the stop, drove away from the house moments before the execution of the search warrant, and did not know about the search warrant did not prevent authorities from having the requisite suspicion to stop him, as further demonstrated by our decision in *Ritchie*. In that case, the defendant was stopped in his driveway and then detained in his yard ten minutes before execution of a search warrant on his residence. *See* 35 F.3d at 1479, 1483. Applying *Summers*, we held the search warrant gave police reasonable suspicion to detain the defendant, regardless of the fact an agent was minutes away en route with the warrant. *Id.* at 1483. In addition, we determined the fact he was leaving the scene and did not have knowledge of the search warrant did not mean he did not pose a threat to officers executing the warrant, as he may have returned home unexpectedly while the search was ongoing and, once there, "[tried] to forcibly thwart execution of the warrant." *Id.* at 1484. For the same reasons, in this case, the search warrant alone provided reasonable suspicion to stop Mr. Castro-Portillo, and the fact he did not know about the search warrant does not diminish the risk he may have posed.

Mr. Castro-Portillo attempts to factually distinguish his case from *Summers* and *Ritchie* by pointing out he had driven away from the house before the search began. However, like the Sixth Circuit, we do not find this distinction

significant, as "*Summers* does not impose upon police a duty based on geographic proximity (i.e., defendant must be detained while still on his premises) ...." *United States v. Cochran*, 939 F.2d 337, 339 (6th Cir. 1991). Like that circuit, we believe the focus should be on whether police detained the defendant as soon as practicable after departing the premises, which "will normally, but not necessarily, result in detention of an individual in close proximity to his residence." *Id.* As another circuit has said, "[t]he proximity between an occupant of a residence and the residence itself may be relevant in deciding whether to apply *Summers*, but it is by no means controlling." *United States v. Cavazos*, 288 F.3d 706, 712 (5th Cir. 2002). In this case, it appears Officer Montgomery stopped Mr. Castro-Portillo as soon as reasonably practicable as he drove away from the house, and Mr. Castro-Portillo admits he "was detained just minutes before the search began ... at 11:40 a.m." Apt. Br. at 15.

In continuing his Fourth Amendment argument, Mr. Castro-Portillo relies on our decision in *United States v. Edwards*, 103 F.3d 90 (10th Cir. 1996), which he contends is factually similar to the circumstances in his case and supports suppression of the evidence obtained from the search. However, we find *Edwards* distinguishable and note it preceded the Supreme Court's decision in *Muehler*. In *Edwards*, officers stopped the defendant after he had driven three blocks away from a house subject to a search warrant. 103 F.3d at 91, 94. It is important to

-13-

note the stop was based on a suspicion his vehicle contained drugs and he might be armed and dangerous. *Id.* at 91-92. The district court concluded that at the time of the street-side stop the police had "reasonable suspicion" to detain him, and neither party appealed that conclusion. *Id.* at 93. However, following the stop, police detained Mr. Edwards for forty-five minutes, during which time he and his vehicle were searched, he was handcuffed, guns were drawn on him, and no *Miranda* warning was given. *Id.* at 91-92. We determined that at the conclusion of the approximately fifteen-minute search of the defendant's car and person, which produced no evidence of illegal activity or danger to police, the police no longer possessed any "reasonable suspicion" warranting his continued detention. *Id.* at 93-94. In so holding, we found his prolonged detention during the thirty minutes that followed, before the search warrant was executed and drugs were found, went beyond a permissible detention, as it was not based on a legitimate interest in preventing flight, preventing risk of harm to the officers, or facilitating orderly completion of the search. *Id.* Mr. Castro-Portillo relies on *Edwards* to contend his own thirty-minute detention was not supported by any governmental interests, as he was not fleeing, did not know about the search, and was not asked to assist in the search on his return to the house.

Unlike *Edwards*, Mr. Castro-Portillo's detention occurred during the search of the house and his detention was not "unduly prolonged" prior to execution of

the search warrant. *Summers*, 452 U.S. at 701. Moreover, Mr. Castro-Portillo does not contend, nor does the record indicate, that any officer held him at gunpoint during his detention. In addition, once stopped, it appears Mr. Castro-Portillo's total thirty-minute street-side and house detainment was as short as the situation and search warranted.[3]

To the extent Mr. Castro-Portillo argues he should have been returned to the house sooner, rather than detained street-side, we note the search warrant gave police the requisite reasonable suspicion to detain Mr. Castro-Portillo *during the entirety of the search*, regardless of whether the detention was accomplished in or outside of his home or both. *See Summers,* 452 U.S. at 702 n.16 (explaining the fact the defendant was detained outside when leaving his house was no more

<hr />

[3] Mr. Castro-Portillo also relies on an Eighth Circuit decision, *United States v. Sherrill*, 27 F.3d 344 (8th Cir. 1994), to support his position his detention constituted a violation of his Fourth Amendment rights. Admittedly, the facts in that case are similar to his, given Mr. Sherrill left his residence just before police executed a search warrant and officers stopped him only one block away from his home. *Id.* at 345. The *Sherrill* court declined to apply *Summers,* in part because the defendant had already exited the premises, and it concluded the street detention greatly increased the intrusiveness of the stop and detention. *Id.* at 346. However, we note the *Sherrill* decision pre-dates the Supreme Court's decision in *Muehler*, which holds authorities have a categorical authority to detain an occupant of a house subject to a lawful search warrant. Moreover, this court is not bound by other circuit court precedent, and, instead, we are inclined to follow our own precedent in *Ritchie*, which has a holding counter to *Sherrill* even though it is based on similar facts. Finally, extenuating factors surrounding Mr. Castro-Portillo's street-side detention sufficiently differ from those presented in *Sherrill* so that it does not substantially aid in our determination of the issues presented.

intrusive than the detention of those inside). While some inconvenience and indignity may be associated with a short, street-side detainment, it is less so than the circumstances surrounding an arrest, the thirty-minute gun-point pre-search detainment in *Edwards*, or a compelled visit to the police station. *See Summers*, 452 U.S. at 702; *Ritchie*, 35 F.3d at 1484. Moreover, the facts of this case do not suggest, as Mr. Castro-Portillo implies, that authorities in any way attempted to manipulate the circumstances in order to detain him street-side.

Mr. Castro-Portillo also argues police unnecessarily handcuffed him during both his street-side and home detentions. However, where a search warrant authorizes a search for weapons, an "inherently dangerous situation" arises which extends the governmental interest "in not only detaining [the defendant], but using handcuffs" during the detention. *Muehler,* 544 U.S. at 100. In this case, the fact Mr. Castro-Portillo left a house subject to a search warrant for contraband and weapons, together with his nervous behavior, reasonably caused Officer Montgomery to believe Mr. Castro-Portillo might have guns on his person or in the car, leading him to handcuff Mr. Castro-Portillo. Under the circumstances, his handcuffed detention was justified by a substantial governmental interest in minimizing the risk of harm to authorities who reasonably believed he might possess a gun or otherwise might present some danger to the officers during the course of the entire search, both while he was detained street-side and later when

-16-

authorities returned him to the house.

As an alternative argument, Mr. Castro-Portillo suggests that because *Summers* expressly refers to the "occupant" of the premises, an inference exists that "residency" of the defendant is required. He then suggests police could not stop or detain him as he exited the house because the search warrant did not expressly implicate him, and they had no other indication Mr. Castro-Portillo resided at the house, had "any ties to the residence," or was involved in the drug operation. Apt. Br. at 13-14. In support, he relies on *Ybarra v. Illinois*, 444 U.S. 85 (1979), in which the Court determined authorities did not have an articulable and individualized suspicion to *search* patrons at a tavern where a search warrant was executed. *Id.* at 91-92.

We disagree with Mr. Castro-Portillo's assessment of these cases. In *Summers*, the Court generally used the term "occupant" and did not limit the principles of its decision only to known residents. 452 U.S. at 703-05. Rather, it explained that issuance of a search warrant is based on probable cause that someone in the home is committing a crime, and "[t]he connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id.* at 703-04. In *Muehler*, the Court applied the same principle in

*Summers* to a woman found sleeping in a house, whom a SWAT team member handcuffed and detained while executing a search warrant. 544 U.S. at 96. The Supreme Court determined her "detention for the duration of the search was reasonable under *Summers* because a warrant existed to search [the address] and she was an occupant of that address at the time of the search." *Id.* at 98.

In this case, authorities admittedly did not know Mr. Castro-Portillo was a resident of the house. However, they could reasonably conclude Mr. Castro-Portillo was at least an occupant of the house, given he was seen exiting the premises at roughly the same time the search warrant was executed. Moreover, the officer making the stop reasonably believed Mr. Castro-Portillo was the "target" of the search, and Mr. Castro-Portillo's failure to provide identification showing otherwise contributed to that belief. The fact Mr. Castro-Portillo was spotted exiting and reentering the house in order to water plants on the premises also contributed to the perception of his occupancy, although admittedly, the officer instructed to make the stop may not have had that information.

With respect to Mr. Castro-Portillo's reliance on *Ybarra*, the *Summers* Court expressly warned that a "seizure" issue "should not be confused with the 'search' issued presented in *Ybarra v. Illinois*." 452 U.S. at 695 n.4. In other words, while police officers have "categorical" authority to *detain* occupants

-18-

subject to a lawful search warrant for contraband, they do not have the same authority to *search* the persons they detain, as the police improperly did in *Ybarra*. *See also Denver Justice*, 405 F.3d at 929-31 (pointing out that while *Summers, Muehler*, and *Ritchie* support categorical authority to detain, they do not support a categorical authority to conduct a pat-down search, unless an inherently dangerous situation arises where the search warrant covers items related to weapons, gang membership, violent crime, or contraband).[4]

Finally, Mr. Castro-Portillo contends that because his detention was improper, any inculpatory evidence obtained should be suppressed. Relying on the three factors identified in *Brown v. Illinois*, 422 U.S. 590 (1975), to determine if a confession is tainted by a prior illegal detention, he argues his illegal detention led to a chain of events, including his confession, which ultimately tied him to the inculpatory evidence found. However, because Mr. Castro-Portillo was not improperly detained, we must discredit this argument and need not apply the factors outlined in *Brown*.

---

[4] Mr. Castro-Portillo does not appeal the police officer's initial waistband search. Therefore, we do not address this issue other than to point out that the search of his person for weapons is distinguishable from the random search of patrons in *Ybarra*. In this case, extenuating circumstances existed, including the fact Mr. Castro-Portillo left a residence suspected of housing a drug operation and containing weapons in support of that operation.

Applying our standard of review to the district court's denial of Mr. Castro-Portillo's motion to suppress evidence, we conclude he has failed to meet his burden of showing the challenged detention was illegal under the Fourth Amendment. *See Higgins*, 282 F.3d at 1269-70. For these reasons, we hold the district court did not err in denying Mr. Castro-Portillo's motion to suppress.

## B. Notice of Enhancement

In appealing his sentence, Mr. Castro-Portillo claims the original information filed by the government under 21 U.S.C. § 851, while timely, did not provide him adequate notice of the enhancement for the purpose of applying it to Count 4 for his marijuana possession. He bases his argument on the fact the information did not reference his marijuana count or the corresponding subsection § 841(b)(1)(D) and, instead, referred only to the cocaine- and methamphetamine-related subsections of § 841(b), which the government represented would be the only counts to which the enhancement would apply. Because he was acquitted of those counts, Mr. Castro-Portillo contends the enhancement cannot apply, even though he previously admitted he committed the prior Texas crime at issue. While he concedes the government is not required "to specify which counts of the indictment notice relates to," he contends that once the government does commit

to a count, "it cannot subsequently pursue enhancement of unspecified counts."[5]

Apt. Br. at 20. In support of his argument, Mr. Castro-Portillo relies on various circuit decisions for the proposition that one of the purposes of § 851 is "to allow [the] defendant to have ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." Apt. Br. at 20-21. *See United States v. Williams*, 59 F.3d 1180, 1181 (11th Cir. 1995); *see also United States v. Hamilton*, 208 F.3d 1165, 1168-69 (9th Cir. 2000); *Kelly v. United States*, 29 F.3d 1107, 1109 (7th Cir. 1994); *United States v. Johnson*, 944 F.2d 396, 407 (8th Cir. 1991). Based on this proposition alone, Mr. Castro-Portillo contends the information undermined his assessment of "the consequences of a guilty plea or verdict" with respect to his marijuana count. Apt. Br. at 21. However, he provides no other specifics to support his contention nor otherwise explains how he was prejudiced.

We begin with an examination of 21 U.S.C. § 851, which states, in part:

(a) Information filed by United States Attorney

---

[5] The government now concedes it was not a clerical error to omit Count 4 from the information, but suggests the original § 851 information nevertheless provided Mr. Castro-Portillo the requisite notice. Specifically, the government contends reference in the original information to some § 841(b) subsections without reference to the subsection pertaining to the marijuana count did not prejudice Mr. Castro-Portillo, given the notice requirements were met and he knew the government intended to seek an enhanced sentence based on the Texas conviction.

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney *files an information* with the court (and serves a copy of such information on the person or counsel for the person) *stating in writing the previous convictions to be relied upon.* Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

21 U.S.C. § 851 (emphasis added).

We have said § 851 was enacted to fulfill the due process requirement that a defendant "receive reasonable notice and opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to trial on the substantive offense." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1485 (10th Cir. 1994) (quotation marks and citation omitted). *See also United States v. King*, 127 F.3d 483, 489 (6th Cir. 1997). Thus, our inquiry is whether the information provided the defendant "reasonable notice of the government's intent to rely on a particular conviction and a meaningful opportunity to be heard." *Gonzalez-Lerma* at 1485 (quotation marks and citation omitted). *See also United States v. Curiale*, 390 F.3d 1075, 1076 (8th Cir. 2004)*; Perez v. United States*, 249 F.3d 1261, 1266 (11th Cir. 2001); *King*, 127 F.3d at 489. Because "[s]ection 851 does not specify the particular form which [a] notice of

enhancement must take ...," *Gonzalez-Lerma*, 14 F.3d at 1485, we must be careful not to "elevate form over substance,"[6] *Curiale*, 390 F.3d at 1077. *See also Weaver*, 267 F.3d at 247; *United States v. Layne*, 192 F.3d 556, 576 (6th Cir. 1999); *King*, 127 F.3d at 489. However, when an error of a non-clerical nature is made which might negatively implicate proper notice of an enhancement or a meaningful opportunity to be heard, this and at least three other circuits consider whether the defendant was prejudiced by the error. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1246 (10th Cir. 1996); *United States v. Severino*, 316 F.3d 939, 944 (9th Cir. 2003); *United States v. Steen*, 55 F.3d 1022, 1025-26 (5th Cir. 1995); *United States v. Campbell,* 980 F.2d 245, 248 (4th Cir. 1992). Because the sufficiency of an information filed under § 851 is a question of law, we review the issue *de novo*. *See Layne*, 192 F.3d at 575; *King*, 127 F.3d at 487-88; *Steen*, 55 F.3d at 1025.

We begin by examining the various circuit court decisions on which Mr. Castro-Portillo relies. We do not differ with the propositions set forth in those cases, but find his reliance on them somewhat misguided. Three of the cases

---

[6] It is important not to elevate form over substance because a distinction exists between the strict procedural requirements in § 851 regarding the "giving of notice, such as service and filing, which are explicit in the statute, and the precise *information* that must be included in an information, which the statute does not specify." *United States v. Weaver*, 267 F.3d 231, 247 (3d Cir. 2001). As the Third Circuit further noted, "[c]ourts have often found that the statute permits more flexibility with respect to the latter." *Id.*

cited concern the timely filing of an information. In those cases, the court determined filing the information before jury selection or before the first trial gave the defendant time to determine whether to enter a plea or go to trial and to plan his trial strategy with full knowledge of the consequences of a potential guilty verdict. *See Williams*, 59 F.3d at 1185; *Kelly*, 29 F.3d at 1109-1110; *Johnson*, 944 F.2d at 407. In other words, the defendant would know the government planned on seeking an enhancement based on the prior conviction and could timely determine whether to plead guilty in an attempt to avoid the consequences of such an enhancement if convicted. The fourth case, *United States v. Hamilton,* concerns an information filed before trial which identified the prior conviction by the wrong year. 208 F.3d at 1167-68. However, because the information contained all other pertinent data about the prior conviction, the court determined the defendant could not have been confused about the prior conviction and, therefore, had sufficient notice for the purpose of advancing to trial or pleading guilty. *Id.* at 1169.

The issues of timely filing of the information and proper identification of the prior conviction have not been raised in this appeal. Moreover, none of the cases cited by Mr. Castro-Portillo indicate the information must identify the specific penalty subsections of § 841(b) or that inclusion of some and not other subsections of § 841(b) in the information is *per se* prejudicial. Instead, Mr.

Castro-Portillo concedes § 851 does not require the government to identify the counts to which the notice relates. *See Campbell,* 980 F.2d at 252 (holding § 851 does not require the government to identify any subsections of § 841).[7] We note the statute itself, § 841(b), explains the statutory sentence for each count a defendant faces and the increase to those sentences if a prior conviction enhancement is applied. *See generally* 21 U.S.C. § 841(b). Thus, had the original information not contained reference to any § 841(b) subsections but provided Mr. Castro-Portillo with notice an enhancement would be sought, he and his counsel could have generally relied on § 841 to assess the penalties and enhanced penalties outlined therein to determine the risks associated with advancing to trial or pleading guilty on each count.

However, in the actual situation presented, the original information is problematic because it included reference to some and not other subsections of § 841(b), and the government verbally represented it would not apply the enhancement to Mr. Castro-Portillo's heroin and marijuana counts. Under these circumstances, Mr. Castro-Portillo reasonably contends he believed the

---

[7] In *Campbell*, the information sought an enhancement in conjunction with one subsection, § 841(b)(1)(C), but instead should have referenced another subsection, § 841(b)(1)(B). 980 F.2d at 247. The court made its determination no prejudice occurred, in part on the fact that, unlike here, counsel "conceded that his trial strategy would have been no different had the government's pretrial information recited the correct sub-part." *Id.* at 252.

enhancement would apply only to the cocaine and methamphetamine counts. However, even if he believed the enhancement would not apply to the marijuana count, it is unclear how he was prejudiced. Clearly, Mr. Castro-Portillo knew the enhancement would increase the statutory sentence for the cocaine and methamphetamine counts from a minimum sentence of five years to ten years in prison. *See* 21 U.S.C. § 841(b)(1)(B)(ii) and (viii). Nonetheless, Mr. Castro-Portillo proceeded to trial on those counts. Given his decision to proceed on those counts, Mr. Castro-Portillo has not explained why, if he had known of the enhancement's application to the marijuana count, he would have pled guilty rather than proceed to trial, especially given the enhancement would have similarly increased his maximum sentence from five to ten years. *See* 21 U.S.C. § 841(b)(1)(D). Without further explanation, Mr. Castro-Portillo's contention seems based on hindsight rather than any trial or guilty plea strategy.

The lack of any specific argument from Mr. Castro-Portillo explaining why he would have otherwise pled guilty if he had known of the enhancement's application to the marijuana charge leads us to conclude he suffered no prejudice from the information's reference to some, but not other, penalty subsections of § 841(b). In other words, nothing about Mr. Castro-Portillo's argument persuades us he would have pled guilty or presented a different defense or trial strategy if the original information had identified the additional subsection relating to the

marijuana conviction.  *See Severino*, 316 F.3d at 945; *Campbell*, 980 F.2d at 252.

IV.  Conclusion

For these reasons, we **AFFIRM** Mr. Castro-Portillo's conviction and sentence.

                                        **Entered by the Court:**

                                        **WADE BRORBY**
United States Circuit Judge