NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0690n.06

No. 12-1672

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jul 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DWAINE DANAIR ALEXANDER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GILMAN, GRIFFIN, and WHITE, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury convicted Dwaine Alexander of conspiracy to possess with intent to distribute, and to distribute, heroin. The district court imposed an enhanced sentence based upon Alexander's prior felony drug conviction. Alexander challenges the sufficiency of the evidence that he joined the conspiracy, as well as his enhanced sentence. For the reasons that follow, we affirm his conspiracy conviction, but remand the matter for further proceedings regarding his sentence.

I.

In connection with an investigation of a heroin-distribution conspiracy in Detroit, federal agents searched Alexander's residence and recovered marijuana and heroin, a digital scale, guns, and $1,003 in cash. The government later charged him and others with various drug and gun crimes. Specifically, a superseding indictment charged Alexander with conspiracy to violate the federal

controlled-substance laws, 21 U.S.C. §§ 841, 846, 856, 860 (count one); possession with intent to distribute heroin, *id.* § 841(a)(1) (count 14); possession with intent to distribute marijuana, *id.* (count 15); possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c) (count 16); and possession of a firearm as a felon, *id.* § 922(g)(1) (count 17). Alexander pled not guilty.

After a five-day trial, the jury returned a verdict of guilty on counts one, fifteen, and seventeen. It acquitted Alexander on counts fourteen and sixteen. The district court denied Alexander's motion for a judgment of acquittal filed at the close of the government's case and renewed after the guilty verdict. *See* Fed. R. Crim. P. 29. Alexander was sentenced and then timely appealed.

II.

First, Alexander challenges the district court's denial of his motion for acquittal on the drug-conspiracy charge. We review the district court's decision de novo. *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The essential elements of a drug conspiracy under 21 U.S.C. § 846 are: (1) an agreement to violate the federal drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Sliwo*, 620 F.3d 630, 633 (6th Cir. 2010).

The jury convicted Alexander of conspiring to possess with intent to distribute, and to distribute, 100 or more grams of a mixture or substance containing heroin. The government

established that, from approximately December 2008 through January 2010, Alexander's brother, Trainer, led a heroin-distribution conspiracy in Detroit. Its theory of Alexander's guilt was that he joined his brother's conspiracy by offering his residence at 5792 Lawton Street in Detroit as a safe place for Trainer to store his heroin.

Alexander conceded that his home was used to store heroin. His defense was that he was "merely present" at his home and neither intended to join, nor participated in, his brother's drug conspiracy, though he may have known about it. The evidence of Alexander's involvement was circumstantial, consisting primarily of items seized from his home during a search. When officers entered the home, Alexander, a paraplegic, was in his wheelchair in the dining room. On a nearby table was a digital scale next to some plastic baggies containing marijuana. Alexander admitted that the marijuana was his and that he used it to manage pain and to compensate those who did him favors. Officers recovered $1,003 in cash from Alexander's pockets. In a room that the government contended was Alexander's bedroom, officers found a shoebox next to the bed. On top of the shoebox were two gallon-sized bags, one containing loose marijuana and the other containing smaller, individually packaged bags of marijuana. Inside the box were two loaded handguns, 56.8 grams of heroin,[1] and Alexander's state identification card used to cash his monthly Social Security checks. The box also contained a picture of Alexander's deceased mother and a copy of her obituary, a birthday card, DVDs, medical papers, and a tube of adhesive that Alexander apparently

---

[1] A law enforcement expert testified that 56 grams of heroin is too much for one person to use, suggesting that it was intended for distribution.

uses in connection with his colostomy bag. Alexander said the box was a repository for special items.

Alexander testified that he never placed the guns, heroin, or his state identification card in the box, and that someone else (one of the conspirators in this case, he believed) had deposited them there. He said he never would have placed guns and drugs in a box also holding his mother's photograph and obituary, out of respect for his mother's memory. He said he last opened the box on Christmas, a month before the search, when he was feeling sentimental; at that time, he told the jury, the heroin and guns were not in there.

Officers also found a number of additional firearms in the residence, including a loaded shotgun underneath a couch in the living room and a rifle and handgun in another bedroom.

Alexander contends that his mere presence at home during the search cannot demonstrate beyond a reasonable doubt that he intended to join the conspiracy, even if he knew about it. He cites a number of cases for support, but they all stand for a different proposition: that two individuals' mere presence together in a house where drugs are sold does not demonstrate a "tacit or mutual understanding" between them to violate the drug laws. *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994); *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990); *see also United States v. Craig*, 522 F.2d 29, 31–32 (6th Cir. 1975) (defendant's presence in a car with a co-defendant then in possession of a box of drugs did not prove an agreement between the men to violate the drug laws). Alexander admits the existence of a conspiracy to distribute heroin, so the cases are inapposite.

The question, rather, is whether the jury could find a legally sufficient connection between Alexander and the conspiracy. *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). The significant amount of heroin stashed inside a personal box found in what a jury could conclude was Alexander's bedroom certainly supports a finding that he intended to join, and participated in, the conspiracy.[2] Alexander's theory for how the drugs came to rest there, while certainly not beyond all belief, does not *compel* a finding of reasonable doubt. The presence of multiple firearms in the home, especially the loaded shotgun underneath the couch in the living room, further supports the government's theory. The jury was free to disbelieve Alexander's testimony that he did not know the guns were there and never intended to use them to protect the heroin. *See id.*

Also misplaced is Alexander's reliance on *United States v. Gibbs*, 182 F.3d 408 (6th Cir. 1999). There, we held that "evidence that the defendants knew each other, grew up together, sold crack in the same area, or on occasion sold crack together fails to prove membership in [a specific] conspiracy" to exclude others from selling drugs in a given geographic area. *Id.* at 423. Otherwise, we explained, a jury could permissibly infer membership simply "by association of the defendants with one another." *Id.* Here, however, there is much more than a simple association between Alexander and the co-conspirators.

---

[2]It is legally irrelevant that the jury acquitted Alexander of possessing the heroin with intent to distribute it. *See United States v. Powell*, 469 U.S. 57, 67 (1984) (review of the sufficiency of the evidence "should be independent of the jury's determination that evidence on another count was insufficient"); *see also Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.").

*United States v. White*, 932 F.2d 588 (6th Cir. 1991) (per curiam), is likewise inapposite. In that case, we held that marijuana growing on land next to the defendant's property was not proof beyond a reasonable doubt that the defendant manufactured or possessed it with the intent to distribute it. *Id.* at 590. The defendant's knowledge of the plants growing next door did not prove what was critical: intent to distribute. *Id.* Arguing along similar lines, Alexander claims that his simple knowledge of the heroin's existence in his house does not prove that he intended to join the conspiracy. Although we agree that his knowledge of the conspiracy is insufficient by itself, other evidence permits the finding that he intended to join, and participated in, the conspiracy.

*Sliwo* also does not support Alexander's position. That case involved application of the rule that a defendant's "participation in a scheme whose ultimate purpose [he] does not know is insufficient to sustain a conspiracy conviction under 21 U.S.C. § 846." 620 F.3d at 633. Although the evidence arguably showed that the defendant had engaged with others in a scheme with a criminal purpose, the proofs failed to show that the defendant knew the conspiracy "involved marijuana as opposed to stolen electronic equipment, counterfeit handbags, weapons, or any other illegal object that could be transported in a van." *Id.* at 636; *see also id.* at 634 ("In this case, the government can point to no evidence that links Defendant to marijuana, 'the essential object of the conspiracy.'"). Here, by contrast, the large quantity of heroin in Alexander's bedroom, inside a box containing his personal items, connects Alexander to the heroin, the object of the conspiracy.

In the end, Alexander offers us an alternative view of the evidence, which, if believed, would support an acquittal. However, what he must do at this stage is demonstrate that no rational jury could find the essential elements of the offense beyond a reasonable doubt. He has not done so.

III.

Alexander next claims that his ten-year sentence on the conspiracy conviction is unlawful because the government failed to provide adequate notice of his eligibility for an enhanced sentence. *See* 21 U.S.C. § 851(a)(1).[3]

A.

In September 2011, well before trial, the government filed an information stating that Alexander, by reason of an identified prior felony drug conviction, was "subject to increased punishment" if "convicted of the pending charges contained in Count One of the Indictment." The next day, the government filed an amended information stating that increased punishment would apply "if [Alexander] is convicted of the pending charges contained in Counts One, Fourteen *and* Fifteen of the Indictment." (Emphasis added.) Based upon the drug quantity alleged, the minimum sentence on count one would increase from five years to ten (§ 841(b)(1)(B)(i)), the maximum sentence on count fourteen would increase from 20 years to 30 (§ 841(b)(1)(C)), and the maximum

---

[3]The statute provides: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

sentence on count fifteen would increase from five years to ten (§ 841(b)(1)(D)), all due to the prior felony drug conviction.

Just before trial commenced, the government notified Alexander and the district court that it would be proceeding on a narrower theory of guilt on count one and would seek to prove only that Alexander conspired with others to possess with intent to distribute, and to distribute, 100 or more grams of heroin.[4] The indictment given to the jury as an exhibit was redacted and reflected the government's narrower theory. The jury instructions and verdict form tracked this theory as well.

The day before sentencing, Alexander filed a written objection to any increase in his mandatory minimum on count one on account of his prior felony drug conviction, claiming that the government's pretrial information included a "condition precedent" to increasing the mandatory minimum: that Alexander be convicted on counts one, fourteen, *and* fifteen of the superseding indictment. This condition was not satisfied, Alexander argued, because he was acquitted on count fourteen and because "count one" of the redacted indictment was materially different from the "count one" referenced in the information.

The government responded the following day with an amended information stating that Alexander was subject to an increased mandatory minimum "if convicted of the charges contained in Count One of the (redacted) first superseding indictment." At the sentencing hearing later that day, without first hearing from the government, the district court overruled Alexander's objection,

---

[4]In other words, the government would no longer seek to prove that Alexander conspired also to distribute cocaine base; to distribute, and possess with an intent to distribute, drugs in a school zone; or to use a premises to distribute cocaine base.

deeming it untimely and frivolous. The court then sentenced Alexander to the statutory minimum of ten years on count one, up from what would have been a minimum of five years absent the enhancement for a prior felony drug conviction.[5]

B.

The district court ruled that Alexander's objection to his enhanced sentence on the conspiracy conviction was untimely, but cited no authority for its finding. Furthermore, in the district court and on appeal, the government has not asserted that Alexander's objection was untimely. Ours is an adversarial system that leaves to the litigants, not the courts, the duty of raising noncompliance with claim-processing rules. *See Henderson v. Shinseki,* 131 S. Ct. 1197, 1202 (2012); *Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011); *see also United States v. Pritchett*, 496 F.3d 537, 546 (6th Cir. 2007) (the § 851(a) requirements are not jurisdictional); *cf. Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam). We therefore decline to affirm on untimeliness grounds in the absence of any such argument by the government.

In addition, at this juncture, we disagree with the district court ruling that Alexander's challenge to his enhanced sentence is frivolous. Instead, we conclude that Alexander's objection needs to be fully aired at an evidentiary hearing.

A pretrial information is designed in part "to satisfy the requirements of due process and provide the defendant with 'reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism.'" *United States v. King*, 127 F.3d 483, 489 (6th

---

[5]Alexander's Guidelines imprisonment range was 33 to 41 months.

Cir. 1997) (quoting *United States v. Belanger*, 970 F.2d 416, 418 (7th Cir. 1992)); *see also Oyler v. Boles*, 368 U.S. 448, 452 (1962) ("[A] defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."). Thus, when a defendant challenges an information, the question often is whether the information "provided the defendant 'reasonable notice of [the government's] intent to rely on a particular conviction and a meaningful opportunity to be heard'" regarding the possibility of an enhanced sentence for recidivism. *King*, 127 F.3d at 488–89 (quoting *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1485 (10th Cir. 1994)). One purpose of giving the defendant notice of his prior conviction is to afford him an opportunity to challenge the use of the conviction to enhance the sentence. The government's first amended information accurately set forth Alexander's previous conviction and thus satisfied this purpose, and Alexander does not contend that his prior conviction is invalid or not a basis for enhancement.

Here, the thrust of Alexander's objection is his argument that "the government should be held to its offer and promise regarding enhancement." His position that an information is a binding contract between the government and the defendant finds no support in the law. However, most circuits have held that a defendant may hold the government to the textual language of the pretrial information if failure to do so would result in prejudice. *See United States v. Castro-Portillo*, 211 F. App'x 715, 725–26 (10th Cir. 2007) ("[W]hen an error of a non-clerical nature is made which might negatively implicate proper notice of an enhancement or a meaningful opportunity to be heard,

this and at least three other circuits consider whether the defendant was prejudiced by the error.").

We agree.

It is widely accepted among our sister circuits that § 851(a)(1)'s pretrial requirement, in addition to giving a defendant a chance to challenge the validity of his prior conviction or its use to increase his sentence, operates to give the defendant enough information for him to decide intelligently and knowingly whether to plead guilty or go to trial, knowing in advance the consequences of a potential guilty verdict. *E.g.*, *United States v. Williams*, 584 F.3d 714, 715 (7th Cir. 2009); *United States v. Morales*, 560 F.3d 112, 115 (2d Cir. 2009) (per curiam); *United States v. Arnold*, 467 F.3d 880, 887 (5th Cir. 2006); *United States v. Hamilton*, 208 F.3d 1165, 1168 (9th Cir. 2000); *United States v. Kennedy*, 133 F.3d 53, 59 (D.C. Cir. 1998); *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995); *United States v. Johnson*, 944 F.2d 396, 407 (8th Cir. 1991); *see also United States v. Gonzalez*, 512 F.3d 285, 290 (6th Cir. 2008) (recognizing this purpose, albeit implicitly); *United States v. Campbell*, 980 F.2d 245, 252 (4th Cir. 1992) (same). A strong textual indication of this purpose is the statute's requirement that an information be filed, if at all, "before trial, or before entry of a plea of guilty." 21 U.S.C. § 851(a)(1). Due process does not require notice of a potential enhancement prior to trial. *See Oyler*, 368 U.S. at 452. Therefore, if providing due process were the sole purpose of the requirement, "notice after conviction but prior to sentencing would suffice." *Morales*, 560 F.3d at 116.[6]

---

[6]To the extent that statements in *King*, 127 F.3d 483, might be read to foreclose recognition of this purpose, *see Morales*, 560 F.3d at 115 n.4, they are dicta. *King* involved the government's mistake in its pretrial information as to the date of the prior conviction. King did not claim that the

Section 851(a)(1) requires that a sentencing-enhancement information (1) be in writing, (2) be filed with the court and served on the defendant or his attorney, (3) be filed and served before trial or before a guilty plea, and (4) identify the previous conviction(s) to be relied upon. *See United States v. Severino*, 316 F.3d 939, 943 (9th Cir. 2003) (en banc); *see also Campbell*, 980 F.2d at 252 (noting that the statute does not require an information to identify which charges are subject to enhancement). Strict compliance with § 851(a)(1)'s modest requirements gives the defendant enough information to decide intelligently what to do. The list of "previous convictions to be relied upon," when coupled with indictment, "will enable competent defense counsel to research applicable penalties and determine his or her client's maximum exposure." *Morales*, 560 F.3d at 116. It is only when a prosecutor goes beyond listing the previous convictions, by perhaps identifying the specific counts to which the enhancement applies or stating the higher mandatory minimum/maximum the defendant is subject to if convicted, that he risks undermining the adequacy of the notice by creating reasonable expectations in the defendant's mind regarding his exposure if convicted and thus skewing his decision whether to plead guilty and forgo trial. *See Castro-Portillo*, 211 F. App'x at 725–26 (noting that non-clerical errors in an information have the potential to "negatively implicate proper notice of an enhancement").

For this reason, it is sound practice for federal prosecutors to include in their notices what the statute requires—"the previous convictions to be relied upon"—and nothing more. Doing so

---

mistake affected his decision to go to trial. The same is true of *Pritchett*, 496 F.3d 537, where the government filed the information after the defendant pled guilty and the defendant did not assert prejudice from the tardiness.

avoids complications at sentencing and may prevent an appeal. *Cf. Williams*, 584 F.3d at 718–19 (suggesting that federal prosecutors comply strictly with § 851(a)(1)'s requirements or suffer the consequences that follow from potentially confusing a defendant).

Whether additional (or erroneous) information in a pretrial notice renders the notice ineffectual, and an enhanced sentence thus unavailable, is a fact-intensive inquiry that depends upon whether the defendant can demonstrate prejudice. That fact explains the diverging results circuit courts have reached when facing the issue. *Compare, e.g.*, *United States v. Baugham*, 613 F.3d 291, 295 (D.C. Cir. 2010) (per curiam) (finding no prejudice from listing the co-defendant's name in the information rather than the defendant's); *and United States v. Vanness*, 85 F.3d 661, 663–64 (D.C. Cir. 1996) (no prejudice from a statement in the notice that the defendant was subject to an increased mandatory minimum of ten years when he in fact was subject to a mandatory life sentence); *and Castro-Portillo*, 211 F. App'x at 726–27 (no prejudice in enhancing a sentence where the information failed to give notice that the offense was subject to enhancement, even though the information also stated that other counts, of which the defendant was acquitted, did carry an enhanced sentence); *with Morales*, 560 F.3d at 114 (remanding to the district court for a hearing on prejudice due to a suggestion in the information, made by reference to a specific statutory subsection in § 841(b)(1), that the defendant was subject only to a statutory minimum of ten years, not twenty); *and United States v. Arnold*, 467 F.3d 880, 888 (5th Cir. 2006) (similar error, same disposition). *See also United States v. Sperow*, 494 F.3d 1223, 1226–28 (9th Cir. 2007).

In the present case, Alexander claims that he "made a decision to go to trial based in part on the government's conjunctive information." He asserts in his appellate brief that he rejected an offer of 36 months to plead guilty "because 5 years (the non-enhanced penalty for Count 1) is not that much greater than 36 months, but 10 years (the enhanced sentence) is a big difference." In other words, had he known that he faced a mandatory minimum of ten years instead of five if convicted just on count one, he would have pled guilty. He further claims that the government's decision to narrow its theory on count one caused him prejudice because he "had reason to believe at the time the enhancement was filed, prior to trial, that he would not be convicted of the Count 1 alleged in said enhancement." The district court did not address these arguments, even though defense counsel clearly presented them at sentencing. In addition, the lower court denied counsel's request for a hearing for the purpose of presenting Alexander's testimony on the issue.

We find Alexander's theory of prejudice "facially plausible," *Morales*, 560 F.3d at 117, and therefore remand for an evidentiary hearing. On remand, the district court shall determine: (1) whether Alexander reasonably understood the government's information to require convictions on counts one (of the superseding, unredacted indictment), fourteen, *and* fifteen in order to enhance his sentence on count one; and (2) if so, whether his understanding affected his decision to go to trial rather than accept the government's plea offer. In addition, we leave it to the district court to address in the first instance the government's arguments for why there was no prejudice.

IV.

For these reasons, we affirm Alexander's conviction on count one and remand for an evidentiary hearing and for other necessary proceedings consistent with this opinion.