**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 12/31/96

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

TRAVIS E. EDWARDS,

      Defendant - Appellant.

No. 96-1033

**Appeal from the United States District Court
for the D. Colo.
(D.C. No. 95-CR-184-M)**

Submitted on the briefs:[*]

Henry L. Solano, United States Attorney and John M. Hutchins and Joseph T. Urbaniak, Jr., Assistant United States Attorneys, Denver, Colorado, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender and Jenine Jensen, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause therefore is ordered submitted without oral argument.

**EBEL**, Circuit Judge.

Appellant Travis Eugene Edwards pled guilty to one count of possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) (1994). He was sentenced to 235 months in prison plus five years supervised release under 21 U.S.C. § 841(b)(1)(A)(iii) (1994). Pursuant to Fed. R. Crim P. 11(a)(2), and with the approval of the court and the consent of the government, Edwards conditioned his guilty plea on the right to appeal the district court's denial of his pretrial motion to suppress. He now brings that appeal. Because we find that none of the evidence admitted by the district court was obtained in violation of Edwards's Fourth Amendment rights, we affirm.

Background

On May 9, 1995, pursuant to a valid search warrant, the Aurora, Colorado police prepared to search a suspected "drug house" located at 1001 Revere Street. Edwards, who was known by the police to be an ex-convict currently in a drug rehabilitation program, neither resided at nor owned the house. However, he was a frequent visitor who sometimes received mail there. At 8:40 am that morning-- after the search warrant was obtained but before the search began--the police observed Edwards and Teri Hardy leave the house in separate vehicles.

Suspecting that Edwards's vehicle contained drugs and that he might be armed and dangerous, the police pulled him over.

Edwards was detained at streetside for forty five minutes, during which time he was handcuffed and guns were drawn on him, although no Miranda warnings were given to him. No contraband or weapons were found on his person or in his vehicle. He did, however, have keys to 1001 Revere Street, which the police obtained and used to enter the house.[1]

The streetside stop ended when the officers who pulled Edwards over were informed by police radio that the search of the Revere Street house had been completed, and a "drug processing station" had been uncovered. At that time, Edwards was formally arrested, and brought to the Aurora police station.

While in custody, Edwards was not given Miranda warnings, and was questioned by police officers throughout the day. Eventually, in a failed attempt to bargain for leniency, he offered to arrange a drug buy from Ron Schuler, whom he characterized as "Mr. Big." When the police, with Edwards's help, arrested Schuler, Schuler alleged that Edwards was in fact "Mr. Big." In support of this claim, Schuler informed the police about two of Edwards's hiding places: a

---

[1] The district court declined to resolve a conflict in the testimony regarding whether Edwards volunteered these keys to the police, or whether the police took the keys from Edwards without his consent. In either event, it is undisputed that the police would have searched 1001 Revere presently, with or without Edwards's keys.

storage locker at 5080 Leetsdale Drive, and Edwards's girlfriend Denise's house at 3545 Ivy Street.

The police obtained Edwards's written consent to search the storage locker at 5080 Leetsdale Avenue. Edwards also provided them with the combination to a safe inside the locker. The search of the locker revealed "multiple firearms, a plastic baggie with some crack cocaine, some jewelry, and approximately $70,000 in U.S. currency." United States v. Edwards, No. 95-CR-184-M, slip op. at 6 (D. Colo. Aug. 22, 1995) (Order).

Edwards also told the police the location of his hiding place inside 3545 Ivy Street: a red "Guess" bag under Denise's bed. Id. Two officers testified that Edwards verbally consented to a search of his property inside that bag, id., and the district court credited this testimony.[2] Id. at 11. Inside the bag, the police discovered two firearms, $29,000 in cash, and 905 grams of crack cocaine. Id. at 7.

Edwards moved to suppress all of the testimonial and physical evidence against him, claiming Miranda violations and Fourth Amendment violations. Specifically, he claimed that his arrest was illegal, and that all evidence flowing from that arrest was "fruit of the poisonous tree." The district court granted

---

[2] Charity Wilson, Denise's mother, did give written consent to a search of her house. Edwards, slip op. at 7.

Edwards's motion with respect to the <u>Miranda</u> violations, and suppressed all the statements he made to the police on May 9. However, the district court rejected Edwards's Fourth Amendment claim, finding that the initial (pre-arrest) streetside stop was lawful under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), and that Edwards's subsequent arrest was supported by probable cause once the search of 1001 Revere uncovered the "drug processing station" there. The district court thus declined to suppress any evidence, other than Edwards's statements.

Edwards then agreed to plead guilty to violating 21 U.S.C. §§ 841(a)(1) (1994), reserving under Fed. R. Crim. P. 11(a)(2) his right to appeal the district court's denial in part of his motion to suppress.


## Jurisdiction

The district court exercised original jurisdiction pursuant to 18 U.S.C. § 3231 (1994). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1994).

## Standard of Review

Determinations of reasonable suspicion and probable cause are reviewed *de novo* on appeal. <u>Ornelas v. United States</u>, 116 S. Ct. 1657, 1663 (1996). However, "findings of historical fact" are reviewed only for "clear error," and due

weight must be given to inferences drawn from these facts by trial judges and law enforcement officers.  Id.

## Discussion

The district court held that, at the time of the streetside stop, the police did not have probable cause to arrest Edwards, but did have "reasonable suspicion" to detain him as allowed by Terry v. Ohio, 392 U.S. 1 (1968).  Neither party has appealed this conclusion.

The district court further held that the police's conduct during the Terry stop, "although bordering on an illegal arrest, . . . [was] reasonable under the circumstances." Edwards, slip op. at 9.  We disagree.

The district court correctly noted that, under our precedents, police may draw guns and use handcuffs during a Terry stop when, under the totality of the circumstances, they reasonably believe such steps to be necessary to protect themselves.  Edwards, slip op. at 8-9;  see United States v. Perdue, 8 F.3d 1455, 1462-63 (10th Cir. 1993) (canvassing precedents); but see United States v. Melendez-Garcia, 28 F.3d 1046, 1053 (10th Cir. 1994) ("the naked fact that drugs are suspected will not support a *per se* justification for use of guns and handcuffs in a Terry stop").  As we said in Perdue, "[t]he Fourth Amendment does not require that officers unnecessarily risk their lives when encountering a suspect

whom they reasonably believe to be armed and dangerous." Perdue, 8 F.3d at 1463.

The district court also correctly noted that "[l]ength of time is the most important consideration in determining whether a restraint is a stop or a full-fledged arrest." Edwards, slip op. at 9 (citing United States v. Serna-Barreto, 842 F.2d 965, 967 (7th Cir. 1988)). However, we disagree with its conclusion, which we review *de novo*, that the 45 minute detention to which Edwards was subjected "was reasonable under the circumstances." Id. The record indicates that Edwards cooperated fully with the police officers, immediately consenting to searches of his car and his person (neither of which produced any evidence of illegal activity or danger to police). At the conclusion of these searches, the police no longer possessed the "reasonable suspicion" which initially justified the stop. At that point, further forcible detention of Edwards amounted to an arrest, though probable cause had not yet obtained.[3] The conclusion that the streetside stop was an arrest is bolstered by Officer Fuller's testimony that he actually *told* Edwards at the *beginning* of the streetside stop that "we're going to take you into

_____

[3] The district court found that the 45-minute detention was reasonable because it lasted "only until the results of the search [of 1001 Revere Street] were known." Edwards, slip op. at 9. But this conclusion necessarily equates the existence of probable cause to *search* 1001 Revere Street with probable cause to *arrest* Edwards: an equivalence which the district court itself expressly rejected. See id. at 8 ("Edwards is correct . . . that the evidence in the affidavit [supporting the search warrant] was not sufficient to create probable cause for his arrest.").

custody at this point in time, [we] want to detain you. . . [so] just follow orders for right now. . . ." (Rec. Vol. II, at 56).

The district court's reasoning leading to its conclusion that Edwards was not arrested until after 1001 Revere was searched appears at first blush to parallel that of the Supreme Court in Michigan v. Summers, 452 U.S. 692 (1981). In Summers, the Court held that "a warrant to search [a house] for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705 (footnotes omitted). If an "occupant" *on* the premises may be so detained, it might appear that Edwards--who had just left the premises--could be similarly detained.

The district court's holding does not flow, however, from the reasoning underlying the Summers decision. In Summers, the court identified three government interests justifying the detention of the occupants: (1) "the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found"; (2) "minimizing the risk of harm to the officers"; and (3) "the orderly completion of the search, . . . [which] may be facilitated if the occupants of the premises are present." Id. at 702-03.

Here, the police's legitimate law enforcement interest in preventing flight in the event that incriminating evidence was found was far more attenuated than

in Summers.  Unlike the defendant in Summers, who was present where the search warrant was executed, Edwards did not know--prior to being stopped--that any warrant *was* being executed.  He thus had no reason to flee.[4]  The police knew the address of Edwards's Denver residence, and had no reason to believe that he would not return to it, or to 1001 Revere Street.  Further, after completing the Terry stop, the police could have "tailed" Edwards had they then let him go.

Neither of the latter two Summers interests were served in any way by Edwards's extended detention.  First, the police quickly determined that Edwards posed no risk of harm to them.  Second, and in contrast to the defendant in Summers, Edwards's streetside detention played no part in facilitating the orderly completion of a search being conducted three blocks away.  Indeed, to the extent that Edwards did play such a role, it was by supplying the officers with the keys to 1001 Revere Street.  After doing so, his detention served no "facilitating" purpose.

---

[4] In United States v. Sherrill, 27 F.3d 344, 346 (8th Cir.), cert. denied, 115 S. Ct. 647 (1994), as here, the police stopped a defendant driving away from a house at which, unbeknownst to the defendant, a search warrant was about to be executed.  The Eighth Circuit rejected the government's argument that this was a valid Terry stop under Michigan v. Summers, 452 U.S. 692 (1981), noting that when the police stopped the defendant one block away from his house, "the officers had no interest in preventing flight or minimizing the search's risk because [the defendant] had left the area of the search and was unaware of the warrant.  Thus, we decline the Government's invitation to extend Summers to the circumstances of this case."  Sherrill, 27 F.3d at 346 (citations omitted).

Thus, we conclude that Edwards was illegally arrested during the approximately thirty minutes between the time when the police completed their "Terry search" of his person and vehicle, and the time when the discovery of the "drug processing station" at 1001 Revere Street gave rise to probable cause for Edwards's arrest. See Summers, 452 U.S. at 700 ("every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."). We proceed to determine which, if any, evidence not suppressed by the district court was the "fruit" of this illegal arrest. See Wong Sun v. United States, 371 U.S. 471 (1963) (holding that evidence discovered as the direct consequence of an illegal arrest must be suppressed as "fruit of the poisonous tree").

As noted *supra*, the district court *did* suppress Edwards's statements to police because Edwards was never given Miranda warnings. Edwards, slip op. at 10. Further, Edwards does not challenge the admission of the evidence discovered at 1001 Revere Street pursuant to the search warrant. (Appellant's Br. at 16). While he does mention in passing that "the evidence seized from storage locker [on Leetsdale Avenue] . . . should have been suppressed," (id.), he neither raised this argument below nor attempts to explain here why his written and signed consent form did not render the search of the locker voluntary. We therefore consider this issue forfeited.

Thus, the only issue contested here is whether Edwards's consent to search the "Guess" bag at 3545 Ivy Street--which the district court found that he gave--was given voluntarily, or rather was given as the "fruit" of Edwards's prior illegal arrest. If the latter, then it must be suppressed. We hold, however, for the following reasons, that Edwards's consent, under the circumstances, was given voluntarily.

The district court correctly noted that:

> The voluntariness of consent must be determined from the totality of the circumstances and the government bears the burden of proving consent. United States v. Soto, 988 F.2d 1548, 1557 (10th Cir. 1993). The government must show that there was no express or implied duress or coercion, that the consent was unequivocal and specific, and that it was freely and intelligently given. Id.

Edwards, slip op. at 10.

The district court found that Edwards's consent was voluntary, because it "was a part of his cooperation in trying to make a deal." Id. at 11. We agree with this conclusion as far as it goes. However, if the only reason that Edwards was "voluntarily" attempting to make a deal was because he was illegally taken into police custody, the "voluntariness" of such consent would be illusory. See 5 Wayne R. LaFave, Search and Seizure § 11.4(d), at 277 (3d ed. 1996) (where a search has its only justification as being "incident to" an illegal arrest, then "unquestionably the evidence found in the search must be suppressed if the antecedent arrest was in violation of the Fourth Amendment."). Thus, because of

our prior conclusion that Edwards's initial detention was an illegal arrest rather than a valid Terry stop, we need ask one additional question that the district court did not reach:  did the intervention of a *valid* arrest prior to Edwards's attempt "to make a deal" purge the taint of his illegal arrest?

We hold on these facts, that it did.  The relevant inquiry in determining whether the taint of an illegal arrest is purged by a subsequent legal arrest is whether the evidence obtained following the legal arrest was discovered through any exploitation of the initial illegal arrest.  United States v. Walker, 535 F.2d 896, 899 (5th Cir.), cert. denied, 429 U.S. 982 (1976), quoted in 5 LaFave, *supra*, § 11.4(d), at 278.  If it was not, then the taint of the unlawful arrest is purged.  Here, as discussed *supra*, once the police obtained probable cause to arrest Edwards, they would have been able to bring him in.  Following that point in time, Edwards's arrest was legal.  His decision to attempt to make a deal thereafter was thus not caused by any exploitation of his initial unlawful arrest.  The taint of the illegal arrest was therefore purged.

## CONCLUSION

We AFFIRM the district court's denial of Edwards's motion to suppress the evidence obtained during the search of his personal property at 3545 Ivy Street.