07-3719-cr(L)
United States v. Bailey

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2010

(Argued: February 14, 2011)                              (Decided: July 6, 2011)

Docket Nos. 07-3719-cr(L), 10-398-cr(CON)

UNITED STATES OF AMERICA,

        *Appellee*,

        v.

CHUNON L. BAILEY, also known as POLO,

        *Defendant-Appellant.*

Before: CABRANES, POOLER and RAGGI, *Circuit Judges.*

————————

      Chunon L. Bailey appeals from an August 23, 2007 judgment of conviction entered by the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*). Bailey was convicted, following a jury trial, of possession with intent to distribute at least five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Bailey also appeals from a January 19, 2010 order by the District Court denying a motion to vacate Bailey's conviction pursuant to 28 U.S.C. § 2255. We are asked to decide two questions: (1) whether the District Court erred in denying Bailey's motion to suppress evidence obtained as a result of his detention because he was stopped in violation of his rights under the Fourth Amendment to the United States Constitution; and (2) whether the District court erred in denying the § 2255 motion because Bailey received constitutionally ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution. In a case of first impression in this Circuit, we hold that Bailey's detention during the search of his residence was justified pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981); the District Court therefore did not err in denying his motion to suppress evidence obtained during that detention. We also hold that the District Court did not err in concluding that Bailey failed to demonstrate, pursuant to the test for ineffectiveness set forth in *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984), that his counsel's alleged ineffective assistance was prejudicial. We therefore affirm the District Court's August 23, 2007 judgment of conviction and its January 19, 2010 order denying Bailey's § 2255 motion.

1

SUSAN V. TIPOGRAPH (Thomas Eddy, *on the brief*), New York, NY, *for Defendant-Appellant Chunon L. Bailey.*

CHARLES P. KELLY, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America.*

JOSÉ A. CABRANES, *Circuit Judge*:

Chunon L. Bailey appeals from an August 23, 2007 judgment of conviction entered by the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*), sentencing him principally to concurrent terms of 300 and 120 months of imprisonment, a consecutive term of 60 months of imprisonment, and five years of supervised release. Bailey was convicted, following a jury trial, of possession with intent to distribute at least five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Bailey also appeals from a January 19, 2010 order by the District Court denying a motion to vacate his conviction pursuant to 28 U.S.C. § 2255 ("§ 2255"). *United States v. Bailey*, No. 2:06-cr-232, 2010 WL 277069 (E.D.N.Y. Jan. 19, 2010).[1]

We are asked to decide two questions: (1) whether the District Court erred in denying Bailey's motion to suppress evidence obtained during his detention because the search and seizure of Bailey's person and property were conducted in violation of his rights under the Fourth Amendment to the United States Constitution; and (2) whether the District Court erred in denying Bailey's § 2255 motion because he received constitutionally ineffective assistance of counsel in

---

[1] On January 30, 2008, we granted Bailey's motion to hold his appeal from the judgment of conviction in the District Court in abeyance so that he could file a petition pursuant to § 2255. We subsequently granted Bailey's motion to restore that appeal and consolidate it with a new appeal from the adjudication of the § 2255 motion.

violation of his rights under the Sixth Amendment to the United States Constitution. We hold that Bailey's detention during the search of his residence was justified pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981). The District Court therefore did not err in denying his motion to suppress evidence obtained during that detention. We also hold that Bailey failed to demonstrate, as he must in order to prevail, that his counsel's alleged ineffective assistance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984). The District Court therefore did not err in denying Bailey's § 2255 motion. The District Court's August 23, 2007 judgment of conviction and its January 19, 2010 order denying the § 2255 motion are affirmed.

## BACKGROUND

The following facts reflect the findings entered by the District Court in the proceedings below, *see United States v. Bailey*, 468 F. Supp. 2d 373, 376-78 (E.D.N.Y. 2006) (motion to suppress); *Bailey*, 2010 WL 277069, at * 2-3 (§ 2255 motion), and, unless otherwise indicated, are not in dispute.

### A.

At 8:45 p.m. on July 28, 2005, Detective Richard Sneider ("Sneider") of the Suffolk County Police Department ("SCPD") obtained a search warrant from the First District Court in the Town of Islip, New York for the "basement apartment of 103 Lake Drive" in Wyandanch, New York, on the basis of information from a confidential informant. The search warrant provided that the apartment was "believed to be occupied by an individual known as 'Polo', a heavy set black male with short hair," and identified a "chrome .380 handgun" as the principal target of the search. The search warrant also stated that the basement apartment at 103 Lake Drive is "located at the rear of the premises[.]" The search warrant did not specify that access to the basement door at the rear of the house at 103 Lake Drive is possible from both the basement apartment and from the house upstairs.

3

At approximately 9:56 p.m. that evening, Sneider and Detective Richard Gorbecki ("Gorbecki"), an eighteen-year veteran of the SCPD assigned to the special operations team for narcotics enforcement, observed two men—later identified as Chunon L. Bailey (the defendant) and Bryant Middleton ("Middleton")—exiting the gate at the top of the stairs that led down to the basement of 103 Lake Drive. Both Bailey and Middleton matched the description of "Polo" provided to Sneider by the confidential informant. They exited the yard of the house and entered a black Lexus parked in the driveway. Rather than confront Bailey and Middleton within view or earshot of the apartment, Sneider and Gorbecki watched as Bailey's car pulled out of the driveway and proceeded down the block.[2] After the car traveled about a mile from the house, the officers pulled the car over in the parking lot of a fire station.[3] Approximately five minutes elapsed between Bailey's exit from the basement apartment at 103 Lake Drive and the stop.

After pulling over the vehicle, the detectives conducted a "pat-down" of the driver, Bailey, and passenger, Middleton, to check for hard objects that could be used as weapons. At Sneider's request, Bailey identified himself and produced a driver's licenses bearing a Bay Shore, New York address. Nevertheless, he told Sneider that he was coming from his house at "103 Lake Drive" in Wyandanch, New York.

Middleton also identified himself and told Gorbecki that Bailey was driving him home in order to comply with a 10:00 p.m. curfew imposed as a condition of Middleton's parole. Middleton stated that Bailey's residence was 103 Lake Drive. At that point, the officers placed Bailey and Middleton in handcuffs and—in response to Bailey's inquiry as to why they were being "arrested"—

[2] Sneider and Gorbecki both testified that the decision not to confront Bailey and Middleton in the driveway at 103 Lake Drive was motivated by safety concerns, particularly the desire to avoid alerting other individuals who may have been in the apartment to the presence of law enforcement.

[3] The detectives explained that they waited about one mile to stop the car rather than detain Bailey and Middleton immediately in order to prevent people in the apartment or neighbors passing by from seeing the stop. In addition, once the Lexus turned off Lake Drive and the detectives were able to get directly behind the vehicle, they waited until the vehicle had passed through an intersection and had turned off of a crowded street before conducting the stop.

4

informed both men that they were being detained, but not arrested, incident to the execution of a search warrant in the basement apartment of 103 Lake Drive. To that, Bailey responded, "I don't live there. Anything you find there ain't mine, and I'm not cooperating with your investigation."

Gorbecki drove Bailey's Lexus back to 103 Lake Drive, while Bailey and Middleton were transported back in a patrol car. Upon arrival, Bailey and Middleton were informed that, during the search, the SCPD "entry team" had discovered a gun and drugs in plain view in the apartment. Bailey and Middleton were placed under arrest and Bailey's house and car keys were seized incident to arrest. Later that evening, an SCPD officer discovered that one of the keys on Bailey's key ring opened the door of the basement apartment. In total, less than ten minutes elapsed between Bailey's stop and his formal arrest.

**B.**

The evidence obtained during the search of Bailey's home and his statements to detectives Sneider and Gorbecki provided the basis for the government's indictment. Bailey moved, through counsel, to suppress the physical evidence (including his house and car keys) and his statements to detectives Snieder and Gorbecki, on the theory that he was unlawfully detained and searched in violation of the Fourth Amendment.

After holding an evidentiary hearing, the District Court found Bailey's detention lawful under *Michigan v. Summers*, 452 U.S. 692 (1981). *See Bailey*, 468 F. Supp. 2d at 378-82. The District Court reasoned that the detectives' authority under *Summers* to detain Bailey incident to a search of the apartment was not strictly confined to the physical premises of the apartment so long as the detention occurred as soon as practicable after Bailey departed 103 Lake Drive. *Id.* at 382. Moreover, the District Court concluded, in the alternative, that Bailey's detention was lawful as an investigative detention supported by reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* at 383-85.

5

A nine-day trial with respect to Count One (possession with intent to distribute more than five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1)) and 841(b)(1)(B)(iii) and Count Three (possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i)) commenced on October 30, 2006. On November 8, 2006, the jury returned a guilty verdict with respect to both Counts.[4]

On December 5, 2008, Bailey filed a motion pursuant to § 2255 seeking to vacate his conviction and order a new trial. Bailey's sole argument was that his trial counsel provided constitutionally ineffective assistance by failing to introduce evidence that access to the basement door at the rear of 103 Lake Drive could be gained from either the basement apartment or the house upstairs. Bailey asserted that when detectives Sneider and Gorbecki observed Bailey exit the gate at the back of the property on July 28, 2005, they could not have known whether he was leaving the basement apartment (for which they had a search warrant) or the house upstairs (for which they did not). Bailey argued that this distinction was determinative in the District Court's adjudication of the suppression motion because the government could not sustain his detention under *Summers* or provide the reasonable suspicion to sustain his detention under *Terry* without demonstrating conclusively that Bailey had emerged from the basement apartment.

The District Court concluded that, even if the detectives had known that access to the basement hallway was possible from an apartment other than the basement apartment, they still would have had a reasonable basis to believe that Bailey and Middleton might have emerged from the property for which they had a search warrant. The detectives therefore had the authority under *Summers* to briefly detain Bailey in order to ascertain whether he was an occupant of the premises being searched. Indeed, as it turned out, the "undisputed evidence at the trial [was] that this door to

---

[4] At Bailey's request, the Court bifurcated the trial, trying Bailey first for Counts 1 and 3, and then for Count 2 (possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)). He was ultimately found guilty of all three counts.

the main house was not accessible to the basement tenant and that the main house was sealed off from the basement area." *United States v. Bailey*, 2010 WL 277069, at \*10 (E.D.N.Y. Jan. 19, 2010).

Because the evidence regarding the layout of the house had no effect on the lawfulness of Bailey's detention, the District Court reasoned that Bailey had not demonstrated any prejudice from his counsel's alleged failure to offer that evidence. Accordingly, Bailey had failed to satisfy the requirement of *Strickland* that a successful claim for ineffective assistance of counsel demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

Bailey appeals from the final judgment of conviction entered by the District Court on August 22, 2007, as well as from the January 19, 2010 order denying Bailey's motion to vacate the conviction pursuant to § 2255. On appeal, he makes substantially the same claims he made before the District Court in his suppression and § 2255 motions. However, he limits his arguments on appeal to the lawfulness of his detention pursuant to *Summers* and *Terry* and the adequacy of his assistance at trial. Appellant Br. 31, 49, 55.[5]

## DISCUSSION

### A.

Appeals from the denial of a motion to suppress evidence and a motion to vacate a conviction pursuant to § 2255 are both governed under the same standard of review: we review the District Court's factual findings for clear error and its conclusions of law *de novo*. *United States v. Lucky*, 569 F.3d 101, 105-06 (2d Cir. 2009) (reviewing a suppression motion); *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005) (reviewing a § 2255 motion). A finding is clearly erroneous when

---

[5] Although Bailey argues that his statements to the detectives and his keys should be suppressed as the fruit of an unlawful detention, he has abandoned his separate Fifth Amendment challenge regarding his statements and his Fourth Amendment challenge regarding the seizure of his keys and car during the stop. *See Bailey*, 468 F. Supp. 2d 373, 385-93. Bailey raised both of those issues before the District Court but does not reassert them on appeal. *See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 294 (2d Cir. 2008); *Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 147 (2d Cir. 2005) (issues not raised on appeal are deemed abandoned).

"although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quotation marks omitted); *accord United States v. Kilkenny*, 493 F.3d 122, 125 (2d Cir. 2007).

**B.**

The basic parameters of our inquiry into the lawfulness of a challenged seizure are well-known. *See, e.g., United States v. Julius*, 610 F.3d 60, 64 (2d Cir. 2010). The Fourth Amendment proscribes "unreasonable searches and seizures." In the absence of probable cause, a limited and temporary detention is generally permissible only if law enforcement can establish reasonable suspicion based on "specific and articulable facts" as measured by an objective standard. *Terry*, 392 U.S. at 21-22. The Fourth Amendment, however, "imposes no irreducible requirement of such suspicion." *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976). Instead, as in all questions under the Fourth Amendment, "the touchstone" of our analysis "is reasonableness." *Palacios v. Burge*, 589 F.3d 556, 562 (2d Cir. 2009) (quoting *Samson v. California*, 547 U.S. 843, 855 n.4 (2006) (alteration and emphasis omitted).

In *Michigan v. Summers*, 452 U.S. 692 (1981), the Detroit police encountered George Summers descending the front steps of his house while they were preparing to execute a search warrant of the premises. Summers was detained during the search and subsequently arrested when narcotics were found in the house. *Id.* at 693. The Supreme Court upheld the initial detention, explaining that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705. That is, the Court concluded that the detention of "occupants" even without individualized suspicion during the execution of a valid search warrant is reasonable under the Fourth Amendment.

8

The *Summers* Court explained that compared with "the inconvenience [and] the indignity associated with a compelled visit to the police station," *id.* at 702, the character of the "incremental intrusion" caused by detention is slight and the justifications for detention are substantial. *Id.* at 703. In particular, the Court justified the detention of George Summers by reference to the interests of law enforcement in (1) "preventing flight in the event that incriminating evidence is found"; (2) "minimizing the risk of harm to the officers"; and (3) facilitating "the orderly completion of the search." *Id.* at 702-03. Moreover, the Court observed that once "[a] judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime[,] . . . [t]he connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id.* at 703-04.

We are now asked to decide whether the same authority pursuant to which police officers may detain an occupant <u>at</u> the premises during the execution of a search warrant permits them to detain an occupant who <u>leaves</u> the premises during or immediately before the execution of a search warrant and is detained a few blocks away. While we have extended *Summers* to permit the detention of individuals entering a vehicle in the driveway of a house, *see United States v. Fullwood*, 86 F.3d 27, 29-30 (2d Cir. 1996), the question presented here is a matter of first impression in our Circuit.

This question has divided the Courts of Appeals. Of the five courts to consider it, three have extended *Summers* on facts similar to those of this case. In *United States v. Cochran*, 939 F.2d 337 (6th Cir. 1991), for example, police officers went to the defendant's residence to execute a search warrant and observed the defendant leaving the premises. *Id.* at 338. The officers did not want to forcibly enter the premises knowing that there was a guard dog inside, and they therefore stopped the defendant shortly after he exited the house. *Id.* The Sixth Circuit, relying on *Summers*, held that the detention was reasonable, concluding that "*Summers* does not impose upon police a duty based

9

on geographic proximity ([*i.e.,*] defendant must be detained while still on his premises); rather, the focus is upon police performance, that is, whether the police detained defendant as soon as practicable after departing from his residence." *Id.* at 339.

Similarly, in *United States v. Cavazos*, 288 F.3d 706 (5th Cir. 2002), police officers were conducting pre-execution surveillance when the defendant and two others left the residence in a truck. *Id.* at 708. The officers followed. *Id.* After the driver of the truck demonstrated his awareness that he was being followed, the officers stopped the vehicle, took the defendant back to the residence, and detained him during the search. *Id.* The Fifth Circuit observed that, because the defendant's conduct "warranted the belief that [the defendant] would have fled or alerted the other occupants of the residence about the agents nearby if he were released immediately after the stop and frisk," the detention was justified under *Summers. Id.* at 711. Moreover, the Court concluded that the nexus between the defendant and the residence gave officers an "easily identifiable and certain basis for determining that suspicion of criminal activity justifie[d] a detention of that occupant." *Id.* (quoting *Summers*, 452 U.S. at 703-04).

Most recently, in *United States v. Bullock*, 632 F.3d 1004 (7th Cir. 2011), officers conducting pre-execution surveillance observed the defendant exit the house and enter a vehicle with the resident of the house and her children. *Id.* at 1009. Officers followed the vehicle and executed a stop about ten to fifteen blocks from the house, transporting all of the occupants of the vehicle back to the house after notifying the driver that a search was underway. *Id.* The Seventh Circuit concluded that—in the absence of anything "to suggest that the vehicle was not pulled over as soon as practicable"—the conduct of the officers was reasonable. *Id.* at 1020. The Court observed that "[o]nce aware of the warrant, [Bullock] became a flight risk and a potential risk to the officers' safety in executing the warrant given his suspected illegal association with the residence." *Id.*

10

Two circuits have declined to extend *Summers* to permit detention of occupants who have been seen leaving a residence subject to a search warrant. In *United States v. Sherrill*, 27 F.3d 344 (8th Cir. 1994), officers were conducting pre-execution surveillance when the defendant left the premises. *Id.* at 345. The officers stopped him a block away, informed him that they had a warrant to search the house, and detained him during the search. *Id.* at 345-46. The Eighth Circuit determined that, because the defendant had left the area and was unaware of the warrant, the officers did not have any interest in preventing his flight; the Court therefore held that *Summers* was inapplicable. *Id.* at 346. Nevertheless, the Court concluded that the police had probable cause to arrest the defendant; in light of the legal arrest, "the crack and cash discovered in a later search of his person was legally seized as a search incident to arrest." *Id.* at 347.

Second, in *United States v. Edwards*, 103 F.3d 90 (10th Cir. 1996), police were conducting pre-execution surveillance of a "drug house" when the defendant, an ex-convict in a drug rehabilitation program, left the building. *Id.* at 91. The officers detained him on the street for forty-five minutes. *Id.* Like the Eighth Circuit in *Sherrill*, the Tenth Circuit concluded that because the defendant was unaware that a warrant was being executed, he had no reason to flee. *Id.* at 94. Furthermore, the Court reasoned that the defendant did not pose a risk of harm to the officers and his detention played no part in facilitating the orderly completion of the search. *Id.*

We agree with the District Court that the Fifth, Sixth and Seventh Circuits have the better of this argument. The guiding principle behind the requirement of reasonableness for detention in such circumstances is the *de minimis* intrusion characterized by a brief detention in order to protect the interests of law enforcement in the safety of the officers and the preservation of evidence. *See Summers*, 452 U.S. at 701. We agree with the District Court that "[t]here is no basis for drawing a 'bright line' test under *Summers* at the residence's curb and finding that the authority to detain under *Summers* always dissipates once the occupant of the residence drives away." *Bailey*, 468 F. Supp. 2d at

11

379; *see also Michigan v. Chesternut*, 486 U.S. 567, 572 (1988) (eschewing a bright-line rule in favor of a totality-of-the-circumstances approach in the determination of the reasonableness of a seizure under the Fourth Amendment); *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004) (applying a totality-of-the-circumstances approach to determine the legality of a warrantless search and seizure); *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir. 1989) (same).

While the Eighth and Tenth circuits apparently concluded that once an occupant leaves a premises subject to search without knowledge of the warrant, *Summers* is inapplicable because he ceases to (1) be a threat to the officers' safety, (2) be in a position to destroy evidence, or (3) be able to help facilitate the search, *see Summers*, 452 U.S. at 703-04; *Edwards*, 103 F.3d at 94; *Sherrill*, 27 F.3d at 346, we conclude that it is the very interests at stake in *Summers* that permit detention of an occupant nearby, but outside, of the premises. Indeed, adopting the Eighth and Tenth circuits' view as the law of the Circuit would put police officers executing a warrant in an impossible position: when they observe a person of interest leaving a residence for which they have a search warrant, they would be required either to detain him immediately (risking officer safety and the destruction of evidence) or to permit him to leave the scene (risking the inability to detain him if incriminating evidence was discovered). *See, e.g., United States v. Gori*, 230 F.3d 44, 55 (2d Cir. 2000) ("The police could assume that once alerted, the occupants might have disposed of the contraband by the window or the toilet, or might have precipitated violence."). *Summers* does not necessitate that Hobson's choice, particularly when "[a] judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime." *Summers*, 452 U.S. at 703. Indeed, to accept that argument would be to strip law enforcement of the capacity to "exercise unquestioned command of the situation," *id.*, at precisely the moment when *Summers* recognizes they most need it.

12

The District Court was therefore correct when it noted that "*Summers . . .* appl[lies] with equal force when, for officer safety reasons, police do not detain the occupant on the curbside, but rather wait for him to leave the immediate area and detain him as soon as practicable." *Bailey*, 468 F. Supp. 2d at 381 n.4.[6] That is, *Summers* imposes upon police a duty based on both geographic and temporal proximity; police must identify an individual in the process of leaving the premises subject to search and detain him as soon as practicable during the execution of the search. As the Fifth Circuit concluded in *Cavazos*, while "[t]he proximity between an occupant of a residence and the residence itself may be relevant in deciding whether to apply *Summers*, . . . it is by no means controlling." 288 F.3d at 712.

Against that standard, we have no trouble concluding that Bailey's detention was lawful under the Fourth Amendment. The officers' decision to wait until Bailey had driven out of view of the house to detain him out of concern for their own safety and to prevent alerting other possible occupants was, in the circumstances presented, reasonable and prudent. There is no question that because the target of the search warrant was a gun, Bailey—who matched the description of "Polo" provided by the confidential informant—posed a risk of harm to the officers. As the Supreme Court stated in *Summers*, "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." 452 U.S. at 702. In light of the fact that the officers had reason to suspect that the occupant of 103 Lake Drive sold drugs out of the house and had a gun in his possession, it was reasonable for the officers to assume that detaining Bailey outside the house might lead to the destruction of evidence or unnecessarily risk the safety of the officers. *See Stewart v. United States*, 101 F.3d 1392, 1392 (2d Cir.

---

[6] Indeed, "[a]t least two of the law enforcement interests articulated in *Summers* applied here—namely, prevention of flight should incriminating evidence be found during the search and minimizing the risk of harm to the officers." *Bailey*, 468 F.Supp. 2d at 379.

13

1996) (citing *Summers*, 452 U.S. at 702). These are precisely the concerns that justified the limited intrusion in *Summers*. 452 U.S. at 701-03.

Finally, Bailey's detention was not "unreasonably prolong[ed]." *United States v. Harrison*, 606 F.3d 42, 45 (2d Cir. 2010) (citing *United States v. Turvin*, 517 F.3d 1097, 1103-04 (9th Cir. 2008)). He was detained for less than ten minutes before he was taken back to 103 Lake Drive. By the time he returned to the site of the search, the search was underway and he was formally placed under arrest within five minutes of the entry team's execution of the warrant. *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 100 (2005) (finding two- to three-hour detainment of occupant in handcuffs reasonable while police searched premises because such detention did not outweigh government's continuing safety interests); *Fullwood*, 86 F.3d at 29-30 (finding fifteen-to twenty minute detainment of occupant during the execution of a search warrant reasonable under *Summers*). Of equal importance, officers did not attempt to exploit the detention by trying to obtain additional evidence from Bailey during execution of the search warrant. *See Summers*, 452 U.S. at 701 (stating that detaining an occupant during execution of a search warrant is "not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention"); *see also Bullock*, 632 F.3d at 1021 (same).

Because the officers acted as soon as reasonably practicable in detaining Bailey once he drove off the premises subject to search, we conclude that his detention during the valid search of the house did not violate the Fourth Amendment. The District Court did not err in denying Bailey's motion to suppress the evidence obtained as a result of his detention. *Bailey*, 468 F. Supp. 2d at 382.[7]

---

[7] Because Bailey's detention was reasonable pursuant to *Summers*, we need not decide whether it was also reasonable pursuant to *Terry*. *See Bailey*, 468 F. Supp. 2d at 382-85.

## C.

We turn now to Bailey's argument that he received ineffective assistance of counsel under *Strickland* because his trial counsel failed to establish that the layout of the premises subject to a search warrant—here, 103 Lake Drive—made it impossible for Sneider and Gorbecki to know <u>with certainty</u> whether Bailey had, in fact, emerged from the basement apartment, or had used the basement to exit the main house.

The standard for ineffective assistance of counsel is well established: a prisoner must show both (1) that counsel's performance was objectively unreasonable; and (2) that the unreasonable performance resulted in prejudice. *Strickland*, 466 U.S at 687, 693-94. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," considering "the totality of the evidence before the judge or jury." *Id.* at 694-95. As the Supreme Court observed in *Hill v. Lockhart*, the prejudice requirement under *Strickland* is predicated on the Court's "conclusion that an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 474 U.S. 52, 57 (1985) (quotation marks and alteration omitted).

We agree with the District Court that Bailey has failed to demonstrate prejudice. *Bailey*, 2010 WL 277069, at *11-15. Here, a confidential informant went with police to defendant's residence prior to the search and specifically identified for police that the back door of the house was the door to the defendant's apartment. *See Bailey*, 2010 WL 277069, at *10; App. at 181-82. Moreover, during the visit the police were able to view the physical lay-out of the property's exterior, which revealed that access to the gate through which Bailey and Middleton exited was only possible through the basement door. App. at 181-82. Under those circumstances it would have been reasonable for the officers to stop Bailey even if they had known that, while unlikely, it was theoretically possible that

15

he had emerged from the upstairs apartment.  As the District Court concluded, "[t]he fact that someone from the main house could possibly have decided to use that rear basement door to exit the house (without having been an occupant of the basement apartment) does not mean that the police have no legal authority to detain individuals emerging from the rear basement door at the time of the search in order to ascertain whether they are residents or occupants of the basement apartment."  *Id.* at \*13.  Accordingly, the fact that police appear to have erroneously assumed that the basement door was <u>only</u> accessible from the basement apartment is of no constitutional significance.[8]

We therefore conclude, as the District Court did, that even if defense counsel's failure to introduce evidence regarding the layout of 103 Lake Drive constitutes objectively unreasonable performance—a question on which we intimate no view—the introduction of that evidence would not have altered the police's authority to detain Bailey under *Summers*.  The District Court therefore correctly denied Bailey's motion for a new trial pursuant to § 2255.

\*     \*     \*

We end on a note of caution. *Summers* is not a license for law enforcement to detain "occupants" of premises subject to a search warrant anywhere they made be found incident to that search.  Instead, we hold today that Summers authorizes law enforcement to detain the occupant of premises subject to a valid search warrant when that person is seen leaving those premises and the detention is effected <u>as soon as reasonably practicable</u>.  In fashioning this rule in this Circuit, we trust that both the geographic and temporal limitations will be policed vigilantly by the courts in order to ensure that *Summers* is applied within the boundaries specified by the Supreme Court.

---

[8] In this case, the design of the house and apartment at 103 Lake Drive justified Bailey's detention because it was reasonable for law enforcement to believe that Bailey was an occupant of the basement apartment and to stop him to confirm that belief.  We intimate no view on how our analysis might change in circumstances where the property subject to search was located in a larger housing structure containing more than two housing units, such as an apartment building.

16

**CONCLUSION**

To summarize, we conclude that:

(1)  Bailey's detention during the search of his residence was justified pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981), because he was (a) an occupant of property subject to a valid search warrant, (b) seen leaving the premises during the execution of the warrant, and (c) detained as soon as reasonably practicable thereafter.

(2)  Because the introduction of evidence regarding the layout of Bailey's residence would not have altered the District Court's analysis of the reasonableness of his stop under *Summers*, Bailey failed to demonstrate, as he must in order to prevail under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), that his counsel's alleged ineffective assistance was prejudicial.

The District Court's August 23, 2007 judgment of conviction and its January 19, 2010 order denying Bailey's § 2255 motion are affirmed.