*203 Justice Scalia,
with whom Justice Ginsburg and Justice Kagan join, concurring.
I join the Court’s opinion. I write separately to emphasize why the Court of Appeals’ interest-balancing approach to this case—endorsed by the dissent—is incompatible with the categorical rule set forth in Michigan v. Summers, 452 U. S. 692 (1981).
Summers identified several law-enforcement interests supporting the detention of occupants incident to the execution of a warrant to search for contraband, along with several reasons why such detentions are typically less intrusive than an arrest. See id., at 701-704. Weighing those factors, the Court determined that “it is constitutionally reasonable to require [a] citizen to remain while officers of the law execute a valid warrant to search his home.” Id., at 705.
The existence and scope of the Summers exception were predicated on that balancing of the interests and burdens. But—crucially—whether Summers authorizes a seizure in an individual case does not depend on any balancing, because the Summers exception, within its scope, is “categorical.” Muehler v. Mena, 544 U. S. 93, 98 (2005). That Summers establishes a categorical, bright-line rule is simply not open to debate—Summers itself insisted on it: “The rule we adopt today does not depend upon such an ad hoc determination, because the officer is not required to evaluate either the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.” 452 U. S., at 705, n. 19. Where Summers applies, a seizure is ipso facto “constitutionally reasonable.” Id., at 705.
The question in this case is whether Summers applies at all. It applies only to seizures of “occupants”—that is, persons within “the immediate vicinity of the premises to be searched.” Ante, at 199. Bailey was seized a mile away. Ergo, Summers cannot sanction Bailey’s detention. It really is that simple.
*204 The Court of Appeals’ mistake, echoed by the dissent, was to replace that straightforward, binary inquiry with open-ended balancing. Weighing the equities—Bailey “posed a risk of harm to the officers,” his detention “was not unreasonably prolonged,” and so forth—the Court of Appeals proclaimed the officers’ conduct, “in the circumstances presented, reasonable and prudent.” 652 F. 3d 197, 206 (CA2 2011) (internal quotation marks and brackets omitted); see also post, at 209-210 (opinion of Breyer, J.). That may be so, but it is irrelevant to whether Summers authorized the officers to seize Bailey without probable cause. To resolve that issue, a court need ask only one question: Was the person seized within “the immediate vicinity of the premises to be searched?” Ante, at 199.
The Court of Appeals read Summers' spatial constraint somewhat more promiscuously: In its view, it sufficed that police observed Bailey “in the process of leaving the premises” and detained him “as soon as practicable.” 652 F. 3d, at 206 (emphasis deleted); see also post, at 212-214. That has pragmatic appeal; police, the argument runs, should not be precluded from seizing the departing occupant at a distance from the premises if that would be safer than stopping him on the front steps. But it rests on the fallacy that each search warrant entitles the Government to a concomitant Summers detention. Conducting a Summers seizure incident to the execution of a warrant “is not the Government’s right; it is an exception—justified by necessity—to a rule that would otherwise render the [seizure] unlawful.” Thornton v. United States, 541 U. S. 615, 627 (2004) (Scalia, J., concurring in judgment).
It bears repeating that the “general rule” is “that Fourth Amendment seizures are ‘reasonable’ only if based on probable cause.” Dunaway v. New York, 442 U. S. 200, 213 (1979). Summers embodies a categorical judgment that in one narrow circumstance—the presence of occupants during the execution of a search warrant—seizures are reasonable despite *205 the absence of probable cause. Summers itself foresaw that without clear limits its exception could swallow the general rule: If a “multifactor balancing test of ‘reasonable police conduct under the circumstances’ ” were extended “to cover all seizures that do not amount to technical arrests/’ it recognized, the ‘“protections intended by the Framers could all too easily disappear in the consideration and balancing of the multifarious circumstances presented by different cases.’” 452 U. S., at 705, n. 19 (quoting Dunaway, supra, at 213 (some internal quotation marks omitted)). The dissent would harvest from Summers what it likes (permission to seize without probable cause) and leave behind what it finds uncongenial (limitation of that permission to a narrow, categorical exception, not an open-ended “reasonableness” inquiry).* Summers anticipated that gambit and explicitly disavowed the dissent’s balancing test. See 452 U. S., at 705, n. 19 (“[T]he rule we adopt today does not depend upon such an ad hoc determination”).
Regrettably, this Court’s opinion in Summers facilitated the Court of Appeals’ error here by setting forth a smorgasbord of law-enforcement interests assertedly justifying its holding, including “preventing flight in the event that incriminating evidence is found” and obtaining residents’ assistance in “open[ing] locked doors or locked containers.” Id., at 701-703. We should not have been so expansive. The Summers exception is appropriately predicated only on law enforcement’s interest in carrying out the search unimpeded by violence or other disruptions. “The common denominator” of the few Fourth Amendment doctrines permitting seizures based on less than probable cause “is the presence of *206 some governmental interest independent' of the ordinary interest in investigating crime and apprehending suspects.” Id., at 707 (Stewart, J., dissenting). Preventing flight is not a special governmental interest—it is indistinguishable from the ordinary interest in apprehending suspects. Similarly, the interest in inducing residents to open locked doors or containers is nothing more than the ordinary interest in investigating crime. That Summers detentions aid police in uncovering evidence and nabbing criminals does not distinguish them from the mine run of seizures unsupported by probable cause, which the Fourth Amendment generally proscribes.
* * *
Summers’ clear rule simplifies the task of officers who encounter occupants during a search. “[I]f police are to have workable rules, the balancing of the competing interests ... ‘must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers.’” Id., at 705, n. 19 (quoting Dunaway, supra, at 219-220 (White, J., concurring)); see also Arizona v. Gant, 556 U. S. 332, 352-353 (2009) (Scalia, J., concurring). But having received the advantage of Summers’ categorical authorization to detain occupants incident to a search, the Government must take the bitter with the sweet: Beyond Summers’ spatial bounds, seizures must comport with ordinary Fourth Amendment principles.

The dissent purports to agree “that the question involves drawing a line of demarcation granting a categorical form of detention authority.” Post, at 209. What the dissent misses is that a “categorical” exception must be defined by categorical limits. Summers’ authorization to detain applies only to “occupants”—a bright-line limitation that the dissent’s “reasonably practicable” test discards altogether.